```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
NEIL JOHNSON,                          :
                                       :
                Plaintiff,             :
                                       :
        -against-                      : REPORT AND RECOMMENDATION
                                       : 05 Civ. 5800 (CLB) (MDF)
M. ROWLEY, in his official and         :
individual capacity,                   :
                                       :
                Defendant.             :
---------------------------------------X
```

TO: THE HONORABLE CHARLES L. BRIEANT, U.S.D.J.

This matter has been referred for all purposes except trial and is before the Court on Defendant's motion to dismiss. The pro se complaint of Plaintiff, an inmate at FCI Otisville, New York, stems from the relationship that Plaintiff seems to draw tacitly or indirectly from different events. One set of facts has been alleged apparently to demonstrate the defendant's animus towards inmates of the Muslim or Islamic faith and the other appears to relate to how Rowley visited or imposed that animus specifically on Plaintiff.

Plaintiff worked for Unicor at the prison. Rowley is the factory manager. In March 2004 Rowley, allegedly relying on non-existent Bureau of Prison policy, instituted an allegedly unconstitutional policy which prevented Muslim inmates who worked at Unicor from praying in the manner prescribed by the prophet. The congregation could no longer pray with an individual leading it in prayer in the Unicor factory facility. In June 2004, Rowley continued his campaign against Nation of Islam adherents by having an unidentified inmate removed from his job in the Unicor office to a job in the Unicor factory because this individual was a troublemaker. Rowley, who allegedly has no

authority over the office, acted at a time when the inmate's supervisor was on vacation.[1]  In October 2004 Rowley removed two unidentified Muslims from the tool room on the basis of subpar performance.  Plaintiff alleges that in fact these individuals' performance was good.  In February 2005 Rowley allegedly showed a Muslim inmate his pistol permit.  The unidentified inmate was soon to be released to a halfway house.  Rowley told the inmate that if he were not careful, he might not make it out of the halfway house.

The allegations concerning Rowley's animus toward Muslims appear in the second half of the complaint.  They are undoubtedly intended to explain the facts in the first half of the complaint, which concern how Plaintiff lost his job at Unicor.

In October 2003 an individual identified as Mr. DeGroot asked Plaintiff to assume the position of clerk in the Unicor office.  Plaintiff's typing skills were rusty.  As a result, he spent time practicing with the equipment in the office, and Rowley specifically told him to direct questions about the computer to the other inmate clerks, who responded to them.  According to Plaintiff, Rowley, the clerks and the Superintendent of Industry, Mr. Reyes, were all aware of his practicing from a typing manual when they were in the office.

On January 9, 2004 Plaintiff worked overtime at the office.  After he finished his assignment of creating an overtime sheet,

---

[1] The date of March 2004 and June 2004 have been arrived at by virtue of a subsequent submission by Plaintiff in which he, without saying so, amends the original pleading dates of March 2000 and June 2000.  The circumstances of his allegations suggested to the undersigned at first glance that "2000" was a typographical error.

2

which task was approved by the factory foreman, he practiced by typing a letter to his wife.  During the composition process Plaintiff used various fonts and printed the work as he went along to see how it actually appeared.  In the middle of this activity, inmates were directed to return to their cells on an early recall, and in response, Plaintiff took the material he had been working on back to his cell and eventually mailed what he describes as the best of the letters to his wife as a sample of his progress in learning to word process.  The letter eventually found its way to the night shift lieutenant, to whom Plaintiff explained the reason for its creation, probably on January 10, 2004.  This individual returned the original to Plaintiff and stated that he would give a copy to Rowley.  When Plaintiff reported for duty on January 12, 2004, Rowley directed him to empty his desk and advised him that his employment with Unicor had been terminated.  From these facts, Plaintiff has set forth four (4) causes of action for which he seeks injunctive relief, including a temporary injunction, compensatory damages for his illegal termination, reinstatement, punitive damages in the sum of five hundred thousand dollars, attorney's fees and costs.  The Court has twice denied preliminary injunctive relief.  As a result of Defendant's moving papers, Plaintiff has withdrawn the first cause of action.  Memorandum of Law, etc. at 3 (doc. #28).

The second cause of action also alleges a denial of due process but from a different vantage point.  Apparently the reason given to Plaintiff for his termination was unauthorized use of Unicor equipment.  Plaintiff essentially relies upon or alleges his perception of an incongruity between that reason for

3

his termination and the circumstances which prevailed in the office.  Rowley had instructed him to direct his questions to the other inmate clerks.  They often responded by telling him to experiment with the word processing functions in a trial and error fashion.  Nobody ever complained about his practicing nor advised him that he was doing anything wrong.  Additionally, as an example of the allegedly "elastic" nature of the unauthorized use rule, Plaintiff alleges that Rowley used the office computers to access the internet in order to obtain football and basketball scores.  Although he characterizes the circumstances he alleges as giving rise to an implied contract of employment, in actuality, he asserts that due process either estopped or prohibited Rowley for firing him for violation of the unauthorized use rule.

   Plaintiff's alleged facts, which are specific and complete and therefore will not benefit from an opportunity to amend, do not create an estoppel or an implied contract of employment, assuming _arguendo_ that New York law, the source of his property right for purposes of a due process claim, actually recognizes his theory.  Most significantly, the defendant, Rowley, did nothing to give Plaintiff the impression or idea that the rules and limitations imposed on inmates who work in Unicor had somehow been repealed.  Plaintiff had signed a document in which he specifically acknowledged that use of Unicor equipment for personal purposes would subject him to immediate termination.  Rowley did not tell Plaintiff otherwise when he referred Plaintiff's inquiries to other inmate clerks nor when he may have used computers for his own purposes.  The other inmate clerks did

4

not tell Plaintiff otherwise either.  Use of keystrokes and command functions on a word processing program so as to understand the functioning of the program and the machinery does not require anyone to create his own document(s) for his own use.  As alleged, the context compels the conclusion that he could have satisfied his educational desires and curiosity within the confines of the limitations imposed, i.e., by experimenting with the word processing functions on the assignments given.  I am persuaded, therefore, that Defendant's motion with respect to the second cause of action should be granted.[2]

In support of the third cause of action, Plaintiff alleges the above related incidents of animus toward unidentified Muslim inmates.  This animus, which underlies Plaintiff's termination, allegedly violated Plaintiff's First Amendment rights.  In response, Defendant invokes the exhaustion of administrative remedies requirement of the Prisoner Litigation Reform Act, 42 U.S.C. §1997e(a), an affirmative defense upon which he bears the

---

[2] Relying on the rule set forth in Beechwood Restorative Care Center v. Leeds, 456 F.3d 147, 156 (2d Cir. 2006), Defendant contends that Plaintiff's due process claims should be dismissed because he might conceivably have obtained reinstatement to his Unicor job through the post deprivation process of prison administrative remedies.  This contention seriously misunderstands the nature and applicability of the rule.  A meaningful post deprivation remedy defeats a due process claim premised upon the random and unauthorized act of a state official.  Id.  The remedy characterized as meaningful arises from the existence of state law which specifically authorizes judicial review of the administrative agency action.  The state law access to judicial review satisfies the federal interest in insuring due process.  A comparable situation does not exist in the context of a federal prisoner.  After exhausting administrative remedies, Plaintiff's access to judicial review does not authorize review of the administrative processing of his grievance, but rather, the merits, if any of his specific claim(s) against the defendant.

burden.  Jones v. Bock, 127 S.Ct. \_\_\_\_ (Jan. 22, 2007) (2007 Westlaw 135890 at *8-*11).

The Bureau of Prisons has a four step grievance process for prisoners, promulgated at 28 C.F.R. §542.13, et seq.: (1) informal resolution with prison staff; (2) formal grievance to the warden; (3) appeal of the warden's decision to the regional director; and (4) appeal of the regional director's decision to general counsel's office at the Federal Bureau of Prisons.  Owusu v. Federal Bureau of Prisons, 02 Civ. 0915 (NRB) (S.D.N.Y. Jan. 7, 2003 (2003 Westlaw 68031 at *2 n. 2).  Defendant has submitted the documents which Plaintiff submitted as he moved through the grievance process.  Defense counsel observes that reference to Plaintiff's religious observance/persuasion as the reason for his termination from Unicor does not appear until the document submitted at the third step in support of the appeal to the regional director.  There, in a document dated March 11, 2004, Plaintiff, for the first time, alleged that Rowley had fired him, not for unauthorized use of the computer, but for his Islamic faith.  In his submission to the next step, Plaintiff concurred with the regional director's assessment that he had not submitted any evidence to support his claim of religious bias.  But, without identifying the evidence, he contended that no purpose would have been served by submitting it at that time, and in this proceeding, he claims he did not have it until March 4, 2004 when Rowley invoked a new Unicor policy to prohibit Muslim inmates from engaging in congregational prayer.[3]  Plaintiff reasons that

---

[3]In this proceeding, similar to the allegations in the
(continued...)

this event disclosed Defendant's bias because it came too soon after an announcement by Rowley in October 2003 that, although congregational prayer could continue, no one individual could stand in the front of the room and lead it.[4]  Rowley's bias had been exposed because, according to Plaintiff, policies don't change that often in the relatively short time frame in which Rowley had announced them.  As might have been expected, the central office sustained the decision of the regional director for the same reason: Plaintiff had violated the agreement which prohibited the use of Unicor computers for personal tasks.

    In <u>Jones</u> the Supreme Court stated:

> In <u>Woodford</u> [v. Engo, 126 S.Ct. 2378 (2006)] we held that to properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules," [126 S.Ct. at 2384]- rules that are defined not by the PLRA, but by the prison grievance process itself.  Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust."  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

2007 Westlaw 135890 at *12; <u>see</u> <u>Ruggiero v. County of Orange</u>, 467 F.3d 170, 176 (2d Cir. 2006).  The applicable regulations specifically advise that, "[a]n inmate may not raise in an Appeal

---

[3](...continued)
Complaint at 6-7 (¶20), he also points to the subsequent terminations of other Nation of Islam members/adherents from the clerk typist positions at Unicor.  These individuals were terminated despite allegedly having had satisfactory job performances.  Plaintiff also alleges that in February 2005 Rowley showed his pistol permit to an unidentified Muslim and told him that in the absence of care, he would not make it out of the halfway house to which he was going to be assigned.

[4]The event of October 2003 has not been alleged in the complaint, even though Plaintiff claims he was employed at Unicor at the time.

issues not raised in the lower level filings." 28 C.F.R. §542.15(b)(2). Given that a scheme of regulations must be applied in its totality to a set of facts, Plaintiff cites 28 C.F.R. §542.17(a) and (b), which, cast in the permissive as opposed to the mandatory, allow the Coordinator at any level of the process to return to the inmate without response any appeal or request to appeal which does not comply with Part 542. The "without response" portion of the license, in fact, does not mean entirely without responding because subdivision (b) provides for Notice:

> When a submission is rejected, the inmate shall be provided a written notice, signed by the Administrative Remedy Coordinator, explaining the reason for rejection. If the defect on which the rejection is based is correctable, the notice shall inform the inmate of a reasonable time extension within which to correct the defect and resubmit the Request or Appeal.

Because he never received a notice of rejection and the administrative process adjudicated his appeal, Plaintiff posits that the defense of exhaustion of administrative remedies has been waived. Plaintiff's reliance on waiver has led Defendant to observe that the defense of failure to exhaust may not be waived by implication, but that position ignores the point that Plaintiff is actually making. More aptly put, Plaintiff asserts that his proposed amendment to the grievance had been accepted because it was not rejected under the rules and the appeal was adjudicated.

    Neither side in this case has addressed the subject matter placed at issue by the facts as presented. The relevant issue is how to treat amendments to grievances. Part 542 does not specifically address amendments to grievances, except that they

obviously cannot be sustained on appeal.  Subdivision (c) of §542.17, however, specifically allows an inmate to appeal rejection of his submission to the next level where the "Coordinator at that level may affirm the rejection, <u>may direct that the submission be accepted at the lower level (either upon the inmate's resubmission or direct return to that lower level)</u>, or may accept the submission for filing." (emphasis suppled). Stripped of its posturing and attitude, Plaintiff's step three submission, should have been understood by any layman who handles prison grievances regularly as a request to amend the grievance at the intial paper submission level.  Indeed, if this Court had received that communication from a <u>pro</u> <u>se</u> litigant and had not inquired or otherwise offered the litigant an opportunity to amend, the Court of Appeals for the Second Circuit would remand the case.  Analogously, the regional director could have taken the comparable approach in this case.

   Adjudication of Plaintiff's original grievance on the merits does not indicate the result visited upon his proposed amended grievance.  Subdivision (c) specifically requires notice to the inmate concerning which of the three (3) available options has been invoked.  The absence of that notice in this record obviously does not demonstrate, which, if any of three, was invoked.  In sum, therefore, the administrative process, at its choice, did not adjudicate Plaintiff's request to amend/amended grievance and as a result, I cannot conclude that Plaintiff has failed to exhaust his administrative remedies concerning his third cause of action.  Accordingly, Defendant's motion as to the third cause of action should be denied.

In the fourth cause of action, Plaintiff alleges that Rowley's limitation on the Muslim method of prayer in congregation in March 2004 violated the Religious Freedom and Restoration Act, 42 U.S.C. §2000bb-1.  Defendant correctly points out that no grievance has been submitted which complains about the alleged imposition by Rowley at Unicor of a limitation on congregational prayer by Muslims.  As a result, Plaintiff has not exhausted administrative remedies and therefore he may not proceed on this claim.  Defendant also observes that Plaintiff has no "standing" to raise this claim because he was not employed at Unicor in March 2004, having been terminated in January 2004. Plaintiff responds by referring to the incident of October 2003. A prohibition of a leader for congregational prayer, October 2003, and a prohibition on congregational prayer, March 2004, do not appear to be one in the same, although I suspect that Plaintiff would allege, if he had to, that within Islam congregational praying without a leader is not congregational prayer.

Final observations:  All outstanding discovery motions are hereby denied.  In the event your Honor adopts this report and recommendation, I will entertain requests by both parties to conduct discovery consistent with this report and limited to Rowley's liability under the third cause of action.  Plaintiff should realize that the existence of a Unicor or prison polic(ies) which affect congregational prayer and Rowley's enforcement thereof do not evidence that Plaintiff was terminated for his religion.  The submissions of Defendant's attorney, who is an Assistant United States Attorney, portend a motion for

10

summary judgment in which Defendant will demonstrate that Plaintiff was terminated from Unicor for cause. As a result, reinstatement as an equitable remedy is not likely, the circumstances, including Plaintiff's pro se status, render a class action unavailable, and a monetary recovery is almost certainly going to be limited to nominal damages for the insult, if there was one.

Based on the foregoing, I respectfully recommend that your Honor grant Defendant's motion to dismiss with respect to the first, second and fourth causes of action and deny it with respect to the third cause of action.

NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended, and Rule 72(b), Fed.R.Civ.P. the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Rule 6(e), Fed.R.Civ.P., or a total of thirteen (13) working days, (see Rule 6(a), Fed.R.Civ.P.), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Charles L. Brieant, at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned, at the said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order or judgment that will be entered by Judge Brieant. See Thomas v. Arn, 474 U.S. 140 (1985); Frank v. Johnson, 968 F.2d 298 (2d

Cir.), <u>cert</u>. <u>denied</u>, 113 S.Ct. 825 (1992); <u>Small v. Secretary of H.H.S.</u>, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam); <u>Wesolek v. Canadair, Ltd.</u>, 838 F.2d 55, 58 (2d Cir. 1988).  Requests for extensions of time to file objections must be made to Judge Brieant and should <u>not</u> be made to the undersigned.

Dated: February 13, 2007
White Plains, New York

>                             Respectfully submitted,
>
>                             _____
>                                       Mark D. Fox
>                             UNITED STATES MAGISTRATE JUDGE

   Copies of the foregoing Report and Recommendation have been sent to the following:

The Hon. Charles L. Brieant

Mr. Neil Johnson (11679-014)
FCI Otisville
P.O. Box 1000
Otisville, New York 10963

Matthew L. Schwartz, Esq.
Assistant United States Attorney
86 Chambers Street 3rd Floor
New York, New York 10007